818 F.2d 861
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
June Anita Lewis, Appellant,
v.
FIRST NATIONAL BANK OF STUART, Appellee.
 No. 86-1716.
 United States Court of Appeals, Fourth Circuit.
 Argued April 10, 1987.
Decided May 8, 1987.
 
 Before RUSSELL, ERVIN and CHAPMAN, Circuit Judges.
 Giles Carter Greer (Greer & Greer & Furrow; Gregory F. Patton; Cooley & Compton, on brief), for appellant.
 Jane Siobhan Glenn (S.D. Roberts Moore; Gentry, Locke, Rakes & Moore, on brief), for appellee.
 PER CURIAM:
 
 
 1
 This case concerns allegations by the plaintiff June Anita Lewis (Lewis) that the defendant First National Bank of Stuart (Bank) maliciously initiated criminal proceedings against her and intentionally inflicted emotional distress upon her. The trial court granted the Bank summary judgment on both charges on the ground that probable cause existed to institute the criminal prosecution, and that Lewis had failed to identify evidence showing intentional infliction of emotional distress. We affirm.
 
 I.
 
 2
 Although there are some critical areas of factual dispute between the parties, both the court below and this court must view the facts in the light most favorable to the plaintiff-appellant. Those facts show that Lewis, who was then a resident of Virginia, obtained a $2,500 installment loan from the Bank on February 19, 1981, using a 1978 Ford pickup truck as collateral. On June 29, 1981, Lewis also obtained a $1,000 signature loan from the Bank to be repaid in a lump sum within 91 days. Lewis had difficulty making payments, and over the next one and a half years she arranged with the Bank to refinance the installment loan four times and the single-payment loan three times. In all of these transactions, she dealt with the same loan officer, Michael Hayes. Lewis finally paid off the single-payment loan by trading the pickup truck for a 1976 Fiat and using the proceeds of the transaction to pay off the note. She signed a new security agreement with the Bank for the Fiat, listing her residence as North Carolina.
 
 
 3
 At the time of her last refinancing of the installment loan in October 1982, Lewis told Hayes that she was moving to California to try to collect child support and alimony payments from her former husband. Despite the fact that the security agreement and state law both required all loan recipients to obtain written permission before removing their collateral to another state, Hayes merely gave Lewis oral permission to take the car to California.
 
 
 4
 Lewis gave Hayes a phone number where she could be reached in California, and made arrangements to receive mail at a Virginia post office box. After she arrived in California she moved in with her friend Annette Warner and filed her change of address with the post office so the mail from the Virginia post office box could be forwarded to California. She made three more payments on the installment loans, two of which were paid on her behalf by her sister. In January 1983 Hayes telephoned Lewis but she was not at home. He spoke to Annette Warner and told her, inter alia, that Lewis should not worry about being behind on the loan--the Bank would work with her.[1] In February Hayes called again, spoke to Warner, and gave a similar message. Shortly after these calls Lewis called the Bank. Hayes was not there at the time so she left the message that she could not afford to continue making payments on the loan and the Bank should make arrangements to repossess the car.
 
 
 5
 Lewis then found a job with Eipper Aircraft Co. and moved from Warner's home to a location closer to Eipper. She filed a change of address with the post office. In the fall of 1983 Eipper relocated and Lewis again moved to be near her work. She again filed a change of address with the post office. During this period she received several letters from Rebecca Nowlin, head of the Bank's collection department, demanding payment, but no information about repossession of the car. The last letter threatened legal action if Lewis failed to pay the amount past due. These letters were all sent to Lewis' Virginia post office box and forwarded by the post office to California.
 
 
 6
 Lewis subsequently contacted a California attorney, Richard Ravreby, to arrange for filing a bankruptcy petition. Ravreby requested $400 and Lewis paid half that amount as a retainer. Ravreby sent letters to all of Lewis' creditors, including the Bank, alerting them to Lewis' impending bankruptcy petition. He told Lewis she need not have any further contact with her creditors. Lewis was unable to pay the remainder of Ravreby's fee so he stopped working on her case. He did not file the bankruptcy petition, he did not respond to the Bank's letter inquiring about the bankruptcy, and he did not inform Lewis that he had received a letter from the Bank.
 
 
 7
 In October 1983 Nowlin obtained Annette Warner's address from Hayes and wrote to Lewis demanding the return of the car or payment in full of the loan. Nowlin also informed Lewis that it was a felony under Virginia law to remove collateral from the state without the permission of the lienholder, and that failure to respond would result in the issuance of a warrant for her arrest. Apparently Lewis' change of address notice had expired by this time, because the post office returned Nowlin's letter stamped "Moved, Left No Address." Nowlin unsuccessfully tried to find a telephone number for Lewis several times, but she never got Annette Warner's number from Hayes, through which Lewis allegedly could always be reached.
 
 
 8
 On January 8, 1984, after discussions between Nowlin and the Bank's attorney, the Bank recommended to the Commonwealth's Attorney that an arrest warrant be sworn out against Lewis for illegally removing collateral from the state. Nowlin swore out the arrest warrant on March 15, 1984, and Lewis was arrested by California police on May 30, 1984. She posted bond but was then rearrested on an extradition warrant, for which bail is not allowed. After Lewis spent 16 days in a California jail her sister returned the car to Virginia and the felony charge was dismissed on an order of nolle prosequi. On March 22, 1985, Lewis filed this suit in federal district court charging the Bank with malicious prosecution and intentional infliction of emotional distress.
 
 II.
 
 9
 Although the court had to resolve factual conflicts in favor of Lewis, it had to view the Bank's actions solely in light of the facts that were known to the Bank or could be charged to the Bank's knowledge at the time Nowlin swore out the arrest warrant. Lewis suggests that the Bank should be imputed with knowledge of her whereabouts because Hayes, the loan officer, had Annette Warner's telephone number, and Warner would have given Hayes the current information on Lewis' location. The Bank's last letter to Lewis, however, was sent to Lewis at Warner's address, and was returned stamped "Moved, Left No Address." This was an adequate basis for the Bank to assume that Warner was no longer aware of Lewis' location.
 
 
 10
 Lewis also relies on the fact that she had oral permission to take the car to California, that Hayes had assured her that the Bank would work with her, and that she herself told the Bank that it should repossess the car. From the Bank's perspective, however, its permission was contingent on regular payments to the Bank; Lewis failed to adhere to the payment schedule, even after she received letters from the bank demanding payment and threatening legal action; she failed to follow through on the bankruptcy petition or respond to the letter the Bank sent to Ravreby; she failed to notify the Bank of her current address; and yet she retained possession of the car. She contacted the Bank only once during the entire time she was in California, to tell it to repossess the car. She continued to use the car for more than one year after this without communicating with the Bank again.
 
 
 11
 From Lewis' perspective, she may just have been waiting for more than a year for the Bank to repossess the car, but from the Bank's perspective--which is critical here--they didn't know where she was, or where the car was, and they were not receiving any payments. Based on this, the court concluded that the Bank could reasonably infer a crime had been committed. We find no error in the grant of summary judgment on the charge of malicious prosecution on the ground that Lewis failed to show an absence of probable cause sufficient to require submission of the issue to a jury.
 
 III.
 
 12
 Lewis' emotional distress was allegedly the humiliation of being arrested--and then rearrested--at her place of work, the indignity of being incarcerated for 16 days, and the resultant loss of her job. The court found that these were merely the unpleasant consequences of being arrested, and that they do not by themselves shoW that Lewis suffered severe emotional distress. Further, Lewis failed to show that the Bank acted outrageously or intolerably, or that the Bank had the specific purpose of inflicting emotional distress on Lewis. We find no error in the court's conclusion that Lewis failed to show any evidence of intentional infliction of emotional distress.
 
 
 13
 For the reasons stated above, the judgment of the district court is
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 Hayes denied this conversation took place. Since, however, we must view the evidence in the light most favorable to the plaintiff, for purposes of the motion, we assume Warner's testimony to be true